Johnson, J.
delivered the opinion of the Court.
From the explanations which have been given, there is no doubt now, that the note, on which this action is brought, fell due on Tuesday the 17th of February, 1829; and that a de-raand was made on Black, the executor tif Slatyson, the maker. *484 on Friday the 20th, the last day of grace : and the only question of law which has been raised in the case is, whether the plaintiff was bound to give notice to the defendant, the indorser, on Saturday, the day after, of the dishonor of the note.
As - general rule, it seems now well settled, that, when the parties reside in the same town, it is incumbent on the holder to give notice to his immediate indorser, of the dishonor of a bill, or note, at farthest, on the day next after the last day of grace; and in the case of Haslett v. Ehrick, 1 N. & M. 116, it was held, that a notice on the third day of grace, after bank hours, was not too < arly, although, in legal strictness, the maker had the whole, day to pay. This, as a general position, is not controverted, hut it is contended, that the same rule, which gives to the holder a day to give notice to his immediate indorser, of the nonpayment and dishonor of the note, intitles each successive indorser to a day to give notice to his immediate indorser; and as the bank here was made thé agent of the plaintiff to demand payment, it tnusl be regarded as a party, and intitled to a day to give notice to the holder, and he to another to give notice to his indorser, and that falling on Sunday, even notice on Monday was in time, when it is admitted, on all hands, that the defendant had notice.
I do not know that there is any fixed usage in this place, in relation to the rule, which allows all the indorsers a day to give notice, and in the absence of any, and if 1 were to prescribe a rule, I should think that it is but reasonable; and it is so laid down in Smith v. Mullett, 2 Camp. 208. According to this rule, the holder has the whole of the day, next after the last day of grace, to give notice to his immediate indorser: he may, therefore, select a late hour for that purpose, and make it a time when it is impracticable, or inconvenient, for the indorser to give notice to his indorser; and the rule is not so rigid as to bind him, omissis omnibus aliis negot.iis, to do it. The number of the indorsers might render it impossible that all should have notice on the same day.
The. cases of Scott v. Lifford, 9 East. 347, Langdale v. Trimmer, 15 East. 291, and Haynes v. Birks, 3 Bos. & Pul. 599, are relied on as authority to shew, that when the agency of the bank, or banker was" called in to demand payment, they were to be considered as a party to. the bill, and intitled to a day to *485 give notice to the holder. But it is most apparent from these cases, that the rule is founded exclusively on the manner of do-iug business in London. In Langdale v. Trimmer, Lord Ellen-borough says, that the banker presented it as a distinct holder, ' and not as connected with his customers, and was therefore intitled to a day. And in Scott v. Lifford, Le Blanc, J. says, that it cannot be contended, that a banker ought to give notice to any but his customers, for whom he held the bills: evidently shewing that the banker is used there as the agent, only for demanding payment of the acceptor of a bill, or the maker of a note, and that, according to the usuage, his agency ceases, when he has given notice of the nonpayment to the holder.
Since the argument of this case, I have endeavored to obtain from the most authentic sources the usage of this place ; and the concurrent information which I have collected from all is, that where a note is placed in bank for collection, if it is not paid when due, it is placed in the hands of a notary, whose duty it is to demand payment. If it is not paid within the bank hours of the last day of grace, the notary, on the evening of that, or on the next day, gives notice to all the indorsers, if they reside in town, if out of town, then by the next mail; and it is not until after all this is done that he returns it to the bank, under protest, and notice to the holder is considered no part of his duty. Under this usage no necessity exists for giving the holder an additional day. The notary stands in the same situation, that the holder would have done, if he had personally made the demand, and the latter is bound to use the same diligence, that would have been required of him ; and the reason of the rule contended for does not therefore apply here. The defendant was inti-tled to notice on Saturday, the day next after the last day of grace, and he is discharged unless it was given.
The death of the maker, and the alleged insolvency of his estate, have been relied on as dispensing with both demand and notice. No case has been cited in which this exception has been allowed; and I am not willing to lead the way in carrying out a new one, in a matter so important to the commercial world, especially when it is the subject of regret by the most experienced and learned Judges, that any ever was admitted. A case might arise where the insolvency of an estate was sus *486 ceptible of direct and positive proof, but for the most part the fact can only be ascertained by a bill in Equity, for an account, and the utter impossibility of investigating that matter as collateral to an action of assumpsit between strangers, is of itself a sufficient reason for not involving it in such an issue.
There was some contrariety of evidence as to the fact, whether the defendant had or had not notice on Saturday, the day next after the last day of grace,; and if the attention of the jury had been directed to that point of time, their verdict according to the practice of the Court would have been decisive. But the presiding Judge reports, that the case was discussed by the counsel, and he instructed the jury, under the impression that the, note was not due until Friday the 20th February, and that the last day of grace was Monday the 23d, on which day, it was conceded, on all hands, defendant had notice. Now as both the counsel and the Court were mistaken, it is at least probable the jury may have been misled, and founded their verdict on the notice given on Monday, without inquiring whether any had been given on Saturday. It is fit therefore that the case should go back, for the purpose of ascertaining that fact. The misapprehension of the Judge as to a material fact, and a direction to the jury accordingly, furnish an irresistible ground for a new trial. 1 Mill, 214.
Motion granted.